**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KEVIN SHEILS,

                            Plaintiff,

      - v -                                       Civ. No. 9:06-CV-482
                                                                (GLS/RFT)

R.J. MINOGUE, *Commissioner's Hearing Officer*;
P. ANO, *Tier Hearing Assistant*;
D. SELSKY, *Director, Special Housing*,

                                  Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

KEVIN SHEILS
Plaintiff, *Pro Se*
99-A-5444
Elmira Correctional Facility
Box 500
Elmira, New York 14902

HON. ANDREW M. CUOMO            CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12207

**RANDOLPH F. TREECE, United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff Kevin Sheils brings this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that the Defendants violated his due process rights when they (collectively and/or

individually) (1) intentionally withheld documents he requested in preparing for a Disciplinary

Hearing, thereby preventing Plaintiff from framing "appropriate questions to inmate witnesses" and

"disput[ing] the evidence against him[;]" and (2) denied him the opportunity to question and call

certain witnesses and to view and introduce documentary evidence. Dkt. No. 1, Compl.

      On February 29, 2008, Defendants filed a Motion for Summary Judgment pursuant to

Federal Rule of Civil Procedure 56(c), which Plaintiff opposed. Dkt. Nos. 27 & 30. On August 21,

2008, this Court issued a Report-Recommendation and Order in which we noted that Plaintiff's disciplinary hearing resulted in mixed sanctions, namely confinement in a special housing unit (SHU) with corresponding loss of privileges and loss of good time credits.  We concluded that by Plaintiff's due process claims, he was  inevitably challenging both the conditions and duration of his confinement, the latter of which are barred by the "favorable termination rule" of *Heck v. Humphry*, 512 U.S. 477 (1994), which states that a claim must be dismissed if a judgment in plaintiff's favor "would imply the invalidity of his conviction or sentence."  Dkt. No. 34 at p. 6 (quoting *Heck*).     Because Plaintiff's due process claims challenged the conditions of his confinement in addition to its duration, we recommended that, pursuant to the Second Circuit's ruling in *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006), Plaintiff's Complaint be conditionally dismissed "until Plaintiff informs the Court that he wishes to proceed with his § 1983 claims concerning the conditions of his confinement and forgo for all time his claims concerning the duration of his confinement." *Id.* at p. 7.  We did not reach the portion of Defendants' Motion for Summary Judgment concerning the merits of Plaintiff's due process claims.

Prior to the District Court's issuance of a decision on this Court's recommendations, Plaintiff filed a Response indicating his desire to "relinquish all future challenges regarding the [twelve] months loss of good-time credits." Dkt. No. 40 at p. 6.  On March 26, 2009, the District Court adopted our recommendations *in toto*, noting Plaintiff's desire to forgo his barred claims and ordered that Plaintiff's conditions of confinement challenges would proceed.  Dkt. No. 42 at p. 2.  With that decision in tow, we now address the merits of Defendants' Motion for Summary Judgment.

## I. FACTS

In our Report-Recommendation and Order, we summarized the relevant facts as follows:[1]

> During the time period relevant to this action, Plaintiff was incarcerated at the Clinton Correctional Facility ("CCF"). Dkt. No. 27, Defs.' 7.1 Statement, at ¶ 2.[2]  On October 31, 2003, Plaintiff was housed in cell #9 of the E-3 housing unit of CCF.  On that day, security staff were conducting cell searches on Plaintiff's gallery. *Id.* at ¶ 3.  During the search of his cell, Plaintiff was involved in an altercation with the CCF security staff members, who used physical force to subdue him. Defendants' assert Plaintiff caused the incident when he became verbally abusive and punched a correctional officer in the face; Plaintiff asserts he was wantonly beaten for a half-hour without cause or justification. *Id.* at ¶ 4; Compl. at 14.
>
> On November 1, 2003, Plaintiff was served with copies of Misbehavior Reports issued by Correctional Officers (C.O.'s) Evens and LaBombard.  The Misbehavior Reports stated that while standing outside his cell during the search,[3] Plaintiff became angry when Evens began to look through his photos, and attempted to approach Evens in the cell.  However, LaBombard interceded and ordered him to step back, at which point Plaintiff punched LaBombard on his left cheek, requiring Evens and LaBombard to force Plaintiff into mechanical restraints.  Dkt. No. 30, Pl.'s Resp. to Defs.' Mot. for Summ. J., Exs., Inmate Misbehavior Reps., dated Oct. 31, 2003, at A1, A-2, A-6, & A-7.
>
> Defendant Captain Robert Minogue was designated to serve as the Superintendent's representative and conduct a Tier III Disciplinary Hearing on the charges filed by C.O.'s Evens and  LaBombard.  Defs.' 7.1 Statement at ¶ 6. Defendant Correctional Counselor Roy Ano was assigned to assist Plaintiff in his defense against the disciplinary charges.  *Id.* at ¶ 7.  At some point before the Hearing, Plaintiff met with Ano,[4] and advised him of the witnesses he wanted to have called and documentary evidence he wished to procure.  *Id.* at ¶¶ 8-9; Pl.'s Resp. to Defs.' 7.1 Statement at ¶¶ 8-9.
>
> Defendant Captain Minogue convened the Disciplinary Hearing on

---

[1] Footnotes included in the following block text reflect footnotes originally included in our August Report-Recommendation and Order.

[2] When the Plaintiff has not objected to a particular statement of fact proffered in the Defendants' 7.1 Statement, or visa versa, we will not cite to both 7.1 Statements.  *See* N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") (emphasis in original).

[3] Prisoners are customarily required to vacate their cells during routine searches.

[4] Defendants assert Ano met with Plaintiff twice before the Hearing, once on November 3, and again on November 12, 2003.  Defs.' 7.1 Statement at ¶¶ 8-9.  Plaintiff asserts his only meeting with Ano was on November 12, 2003.  Pl.'s Resp. to Defs.' 7.1 Statement at ¶¶ 8-9.

November 13, 2003. Defs.' 7.1 Statement at ¶ 10. The Hearing spanned several days, and on November 19, 2003, Defendant Ano met with Plaintiff and discussed his requests for additional inmate witnesses and facility personnel. *Id.* at ¶ 12; Compl. at ¶ 20. Ano contacted the inmates, recorded their responses, and advised Plaintiff accordingly. Defs.' 7.1 Statement at ¶ 12. Over the course of the proceedings Plaintiff argued with Defendant Minogue over a range of issues including his requests to have security staff subjected to polygraph examinations, to have over a dozen inmates called to testify, and to have access to the medical records of security staff. *Id.* at ¶ 13; Pl.'s Resp. to Defs.' 7.1 Statement at ¶ 13. On November 25th, Defendant Minogue ejected Plaintiff from the Hearing after Plaintiff repeatedly failed to control his outbursts. Defs.' 7.1 Statement at ¶ 14. Minogue continued to receive testimony from witnesses in Plaintiff's absence. *Id.* at ¶ 15.

On November 26th, Minogue completed the Hearing and found Plaintiff guilty of Interference with an Employee, Assault on Staff, and several related charges. *Id.* at ¶ 16. Minogue sentenced Plaintiff to twelve (12) months confinement in the Special Housing Unit (SHU) with concomitant loss of packages, commissary, and telephone privileges; he also recommended a twelve (12) month reduction in good-time credits. *Id.* at ¶ 17. Plaintiff appealed the decision to Donald Selsky on December 21, 2003, who affirmed the decision. Dkt. No. 27, Donald Selsky Decl., dated Feb. 21, 2008, Ex. A, Rev. of Supt. Hr'g, dated Feb. 12, 2004.

On March 8, 2004, Plaintiff filed another appeal with Selsky, asking him to reconsider his denial of Plaintiff's appeal on the grounds that he was wrongly denied the opportunity to bring in certain witnesses and that Minogue was impartial. Selsky Decl., Ex. A, Pl.'s Lt. Appeal, dated Mar. 8, 2004. In a letter written on Plaintiff's behalf, the Prisoners' Legal Services of New York asked Selsky to reconsider his denial of Plaintiff's appeals on the grounds of improper denial of witnesses and preclusion of relevant documentary evidence at Plaintiff's Hearing. Selsky Decl., Ex. A, Lt. from Theresa Wells to Donald Selsky, dated Apr. 9, 2004.

Although the record does not contain a formal response to these petitions, both parties assert that they were denied by Selsky. *See* Selsky Decl. at ¶ 9; Compl. at ¶ 43. Plaintiff filed the instant federal action on April 18, 2006.
Dkt. No. 34, Rep.-Recommendation and Order at pp. 2-4.

We add the following facts that are relevant to our consideration of the merits of Defendants'

Motion. In September 2004, Plaintiff received copies of documents related to the October 31, 2003

Incident from Prisoners' Legal Services, who had received the documents from the Department of

Correctional Services (DOCS) in connection with their effort to appeal Plaintiff's disciplinary

sanctions. Defs.' 7.1 Statement at ¶ 18; Pl.'s Resp. to Defs.' 7.1 Statement at ¶ 18; Compl. at ¶ 25.

In addition to copies of the Misbehavior Reports issued by C.O.s Evens and LaBombard, which

*-4-*

Plaintiff received before the Disciplinary Hearing, Plaintiff received hand-edited versions of those same Misbehavior Reports. LaBombard's original Misbehavior Report stated the following: "I then grabbed Sheils around the waist area in a bear hug type hold and placed him on the wire fencing of 3 company." Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex., Inmate Misbehavior Rep., dated Oct. 31, 2003, at A-2. Evens's original Misbehavior Report stated: "I came out of the cell and forced Sheils into the wire fencing[.]" *Id.* at A-7. Both edited versions simply added the words "face first", so as to read: "I then grabbed Sheils around the waist area in a bear hug type hold and placed him *face first* on the wire fencing of 3 company," and "I came out of the cell and forced Sheils *face first* into the wire fencing[,]" respectively. *Id.*, Edited Inmate Misbehavior Reps.,[5] dated Oct. 31, 2003, at A-3 & A-8 (emphasis added). Along with the edited Misbehavior Reports were addenda from Evens and LaBombard to Sergeant (Sgt.) Brannen, stating they were submitting the edited Misbehavior Reports in order to clarify Sgt. Brannen's questions regarding the October 31st Incident. *Id.*, Addenda, dated Nov. 5 & Nov. 4, 2003,[6] at A-4 & A-9.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no

---

[5] The edits to the original handwritten Misbehavior Reports we done by hand and were followed by the initials of C.O.s Evens and LaBombard, respectively.

[6] The dates on the edited Misbehavior Reports were not changed from those on the original Misbehavior Reports. However, the dates of the addenda explaining the genesis of the edited Misbehavior Reports are dated November 5 & 4, 2003, respectively.

genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . .  interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Due Process Claims

Plaintiff claims his due process rights were violated during the course of his November 2007 Disciplinary Hearing.  Generally speaking, a prisoner placed in administrative segregation must be provided: (1) advanced written notice of the charges against him at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, call witnesses, and present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action taken.[7] *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (quoting *Hewitt v. Helms,* 459 U.S. 460, 476 (1983)).

In this case, Plaintiff asserts that: (1) relevant evidence was withheld from him prior to and during his Disciplinary Hearing, Compl. at ¶¶ 2, 18-19, & 45; (2) Defendant Minogue denied him the opportunity to present objections, question witnesses, and introduce evidence, Compl. at ¶¶ 40

---

[7] Defendants do not contest Plaintiff's assertion that, as a consequence of his twelve (12) month SHU confinement, he was subjected to an atypical and significant hardship thereby vesting him with a liberty interest. *See* Dkt. No. 27-2, Defs.' Mem. of Law, at p. 8.  Therefore, we presume the existence of such a liberty interest. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (stating that a confinement in SHU exceeding 305 days was atypical).

& 45; and (3) Defendant Ano denied Plaintiff access to records and generally failed to meet his duties as a Hearing Assistant, Compl. at ¶ 29, 39, & 48.  We address these due process claims in turn.

### 1.  *Access to Evidence*

As Defendants accurately note, Plaintiff's due process claim rests "upon his conclusion that he was entitled to copies of all editions of written statements by prison personnel regarding the October 31, 2002 incident, something akin to the New York State rule in criminal proceedings established under *People v. Rosario*, 9 NY2d 286 (1961) (prosecution required to turn over witnesses' prior statements relating to their trial testimony)."  Defs.' Mem. of Law at p. 9. Essentially, Plaintiff alleges that he was not provided with all of the documentary evidence available at the time of his Hearing, including copies of the Amended Misbehavior Reports, which added the words "face first" to the originals.  Plaintiff contends such evidence was withheld in order to cover up the alleged beating he suffered.

But, Plaintiff does not deny that he was provided with the original Misbehavior Reports that do not contain the "face first" annotations.  Plaintiff clearly had notice of the nature of the charges against him, and the only difference between the original Misbehavior Reports and the Amended Misbehavior Reports are the specification that Plaintiff was pushed "face first" into the wire fence. Although Plaintiff asserts that such amendments reveal Defendants' intent to cover up his facial injuries, which he asserts were the result of several C.O.s' blows to his face, Plaintiff acknowledged at the Disciplinary Hearing that his face was pushed up against the screened wall, stating: "I was put on the wall.  On the . . . screen, the grill.  And they mushed my head into it.  Cut my head open on it."  Dkt. No. 27, Charles J. Quackenbush, Esq., Decl., dated Feb. 24, 2008, Ex. B, Disciplinary Hr'g

Tr., dated Nov. 26, 2003 [hereinafter "Hr'g Tr."], at p. 7.  Several other witnesses, including C.O.s

and inmates, testified to the fact that Plaintiff was restrained face first against the metal fencing.  *Id.*

at pp. 31, 51, 61, 64 & 68.  Moreover, Plaintiff was given the opportunity to question C.O.s Evens

and LaBombard regarding the Misbehavior Reports they authored.  *Id.* at pp. 12-24 & 28-43.

Finally, during the course of his administrative appeal, Plaintiff eventually received all of the

documents that DOCS provided to Prisoners' Legal Services.  Plaintiff presented those documents,

as did Prisoners' Legal Services, to Defendant Selsky, who reviewed and ultimately denied his

administrative appeal.  Selsky Decl. at ¶¶ 8-9 & Ex. A.

Thus, Plaintiff does not appear to have been prejudiced in any way as a consequence of not

having received copies of the Amended Misbehavior Reports, which were duplicative of his own

testimony and that of the other witnesses.  Given Plaintiff's access to the original Misbehavior

Reports and his opportunity to question the C.O.s, upon whose *oral testimony* his conviction was

based, we find that Plaintiff's due process rights were not violated by his non-receipt of the

Amended Misbehavior Reports.  *See, e.g., Lebron v. Artus*, 2008 WL 111194, at *9 (W.D.N.Y. Jan.

9, 2008) ("[D]ue process does not require that a prisoner be provided with all the documentary

evidence he has requested.") (citation omitted).

2.  *Present Objections, Question Witnesses, and Introduce Evidence*

Plaintiff's second due process claim is that Minogue denied him the opportunity to present

objections, question witnesses, and introduce evidence during his Disciplinary Hearing.  Plaintiff's

claim regarding evidence appears to be a repetition of his previously discussed claim that various

relevant documents were not provided to him prior to nor during the Disciplinary Hearing.  Because

we have already concluded that Plaintiff suffered no due process violation resulting from his lack

of access to such documents, we need not rehash that discussion.

Furthermore, a review of the Hearing Transcript reveals that Plaintiff was provided ample opportunity to question witnesses and that his numerous objections were noted by Minogue. *See generally* Hr'g Tr. To the extent Plaintiff's claim is based on the fact that he was ejected from the Hearing and was therefore unable to question witnesses in person, the Transcript shows that Minogue excused Plaintiff after warning him several times that his frequent interruptions and commentary would not be tolerated. *Id*. at pp. 16, 28, 38, & 46-50. There is no due process violation when a hearing officer is forced to remove an obstreperous inmate from disciplinary proceedings. *See, e.g., Carter v. Cleveland*, 1995 WL 818678, at *4-5 (W.D.N.Y. Feb. 15, 1995) (finding no due process violation when prisoner was removed from hearing due to his own misbehavior). Minogue continued to call and question witnesses in Plaintiff's absence, including several inmates who were on Plaintiff's cell block on the date of the incident. Hr'g Tr. at pp. 52-70 (questioning Inmates Chambers, McDonald, Taylor, and Perkins).

Therefore, we find that Plaintiff's due process rights were not violated during the course of his Disciplinary Hearing, before or after his ejection. As such, the above claim should be **dismissed**.

### 3. *Defendant Ano's Assistance*

Plaintiff asserts that Defendant Ano violated his due process rights by denying him access to evidence and failing to adequately assist Plaintiff in his defense at the Disciplinary Hearing. Plaintiff's allegation against Ano appears to be that Ano failed to produce the documentary evidence that was later obtained by Prisoners' Legal Services. Compl. at ¶¶ 38-39. For the reasons stated above, Plaintiff's due process rights were not violated as a result of not having such documents during his Disciplinary Hearing. *See supra* Part II.B.1; *see also Lebron v. Artus*, 2008 WL 111194

at *9.

Therefore, it is recommended that this claim also be **dismissed**.

### C.  Supervisory Liability

Plaintiff has sued Defendant Superintendent Selsky based upon a theory of supervisory liability. Compl. at ¶¶ 51-52. The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, __ U.S.__, 129 S. Ct. 1937, 1948 (2009).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

In this case, because we find that Plaintiff's underlying due process claims are without merit,

none of the above bases for supervisory liability are applicable.[8]  *See Blyden v. Mancusi,* 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.").

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 27) be **GRANTED** and the Complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).


Date:   November 1, 2010
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

---

[8] For the same reason, we also need not decide whether Defendants would be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").